IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MURRAY G. FULGHAM                                                         PLAINTIFF

V.                                             CIVIL ACTION NO.4:13CV182-DMB-DAS

BRUCE E. WOFFORD and
ANIMAL TOTAL HEALTH, LLC                                               DEFENDANTS

REPORT AND RECOMMENDATION

This matter is before the court on the motion of the defendants to enforce the settlement agreement and to dismiss this action with prejudice (# 37). After considering the motion and conducting an evidentiary hearing, the court reports it factual findings and makes recommendations as follows:

I. FACTS

Murray "Pete" Fulgham and Bruce E. Wofford, along with their wives, were once business partners. Fulgham had an idea for an animal nutritional supplement using oil derived from soy beans but had been unable to locate a dependable source of oil. When they met Wofford was working in the oil business and assured Fulgham that he could find a source for the needed oil. Thus the partnership, doing business as Animal Wellness Products, LLC, came into existence. This business developed and marketed animal nutritional supplements, including two formulations the partnership called Equine Mega Omega. One formulation of Equine Mega Omega was supposed to benefit horses regarding a number of conditions, one of which was to help *prevent* anhidrosis. Anhidrosis is a condition where horses have trouble sweating adequately. The other formulation they produced was the anhidrosis or "sweat" formulation which was used to *treat* anhidrosis. A patent, U.S. Patent No. 8,536,220 B2 (hereafter the 220

patent) was issued for these supplements, listing both men as inventors. A later continuation of the patent and a continuation-in-part of the 220 patent were issued in Fulgham's name alone. Subsequently, the parties' business relationship deteriorated and they eventually separated. After they separated, the Fulghams continued to sell and market the product as Equine Mega Omega, but the Woffords marketed their product as Equine Total Gold.

Two lawsuits arose out of this failed business relationship. The first was a state court action filed by the Woffords against the Fulghams, alleging the Woffords were locked out of the business. When the Woffords set up a competing business and started manufacturing these nutritional supplements and marketing them under a different name, Fulgham filed this action seeking correction of the 220 patent to list him as the sole inventor and for infringement of the 220 patent. On May 13, 2014, the undersigned conducted a settlement conference with the parties, their wives, and counsel. All parties present indicated their desire to mediate and hopefully resolve all claims between the parties growing out of the demise of the business relationship. At the end of that conference the court understood the parties had compromised and settled all claims, but it now has before it the motion of the defendants, Bruce E. Wofford and Animal Total Health, LLC, to enforce the settlement agreement. The plaintiff opposes the motion, arguing there was never a meeting of the minds.

Most of what transpired at the settlement conference and all but one of the terms of the agreement are undisputed. The parties agree that a specific, confidential sum was to be paid to the Woffords for their claims regarding their business interests in the Animal Wellness Products, LLC. The parties also agree that the Woffords were to receive a royalty-free license under the 220 patent to produce products and that they would be able to make claims about the efficacy of

the products consistent with their business practice since opening their competing business. The agreement prevents the Woffords from assigning or selling this license for a period of five years, unless Bruce Wofford dies or becomes incapacitated. The Woffords agreed to pay the Fulghams seven and one-half percent of any sales proceeds if they ever sell their license, and Wofford agreed to assign his rights under the 220 patent to Fulgham. Finally, the parties agreed to dismiss both pending lawsuits with prejudice.[1]

The only dispute before the court is whether there was an agreement to allow Wofford to produce and market the "sweat" formulation. Fulgham claims that he did not and would never agree to grant a license to Wofford for this product. He claims this product and the claims associated with it are of great value, because it *treats* anhidrosis, as opposed to the other formulation, which helps *prevent* anhidrosis.

As required by *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984) the court held an evidentiary hearing on the motion to enforce the settlement agreement. At the hearing, Fulgham testified there was a major distinction between the regular and "sweat" formulation; that it was never his intention to grant a license to the defendants to produce and market the "sweat" formulation; and that he was not made aware at the settlement conference, nor was he otherwise aware that the Wofford's competing business had been producing and marketing this "treatment" formulation. Therefore, when Fulgham agreed to allow his former business partner to proceed with his new business as Wofford had done since founding that business, he did not agree to allow Wofford to produce or market a product to *treat* anhidrosis.

---

[1] While this court lacks authority and has no jurisdiction over the state court or direct control of the state court action, the lack of jurisdiction to enforce the state aspect of the settlement agreement is moot. The plaintiff in the state court action seeks enforcement of the settlement agreement in this court and must comply with the agreement himself to reap the benefits of the agreement.

On the other hand, Wofford testified that his business produced the same equine products and made the same claims about those products as the parties had done while working together; that his business' website revealed his production and marketing of the "sweat" formulation; and that Fulgham had possession of his marketing materials for the sweat formulation well before the settlement conference. Wofford contends there was an agreement to settle and no misunderstanding about the terms of the settlement. Rather, he argues, Fulgham is simply trying to renege on the agreement.

## DISCUSSION AND ANALYSIS

Because "[c]ompromises of disputed claims are favored by the courts," *Cia Anon Venezolana De Navegacion v. Harris,* 374 F.2d 33, 35 (5th Cir.1967) (*quoting Williams v. First National Bank,* 216 U.S. 582 (1910)), it has long been settled in Fifth Circuit jurisprudence that a federal court has the inherent power to recognize and enforce a settlement of litigation pending before it. *See White Farm Equipment Co.*, 792 F.2d at 529. A settlement agreement is a contract and is judged by principles of state law or federal common law applicable to contracts generally. In this case, because it is an action arising under the patent law of the United States, federal common law controls. *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389 (5th Cir. 1984) ("Questions regarding the enforceability or validity of such agreements are determined by federal law– at least where the substantive rights and liabilities derive from federal law."); *Fulgence v. J. Ray McDermott & Co.*, 662, F.2d 1207, 1209 (5th Cir. 1981).

The agreement to settle the patent claims and other related claims must be entered into voluntarily and knowingly. Such settlements are not required to be reduced to writing, and oral settlement agreements are enforceable. Additionally, under federal law, "[o]ne who attacks a

4

settlement must bear the burden of showing that the contract he has made is tainted with invalidity." *Mid-South Towing Co.*, 733 F.2d at 392 (5th Cir. 1984) (quoting *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630 (1948)). Under *Mid-South* the party opposing enforcement of the settlement based on a challenge to the validity of the agreement must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement. *Mid-South*, 733 F.2d at 390.

With his response to the motion and his testimony at the hearing, the plaintiff argues that he did not intend to and did not agree to grant a license to Wofford to produce the "sweat" formulation, and certainly would not have agreed that Wofford could make claims that any product was effective in treating equine anhidrosis. Consequently, he argues there was no meeting of the minds and thus no contract. The undersigned concludes, however, that there was a meeting of the minds and the creation of an enforceable settlement agreement.

The undersigned finds, that even accepting Fulgham's testimony in its entirety, he has failed to make the showing required under federal law. His testimony and argument show at most his own unilateral mistake. At best, Fulgham agreed to allow Wofford to continue to conduct his rival business in accordance with Wofford's established practice, without having ascertained the scope of those established practices. Wofford testified without contradiction that his new business produced the same products and made the same marketing claims as Animal Wellness Products, the business he formerly owned with Fulgham. He suggested his production of the sweat formulation in his new business should not have been a surprise to Fulgham. If Fulgham were unaware, it was his unilateral mistake and it is not sufficient to allow Fulgham to escape the agreement shown by the objective proof. *Mid-South Towing*, 733 F. 2d at 391-92.

5

Even under Mississippi law – because this is an error Fulgham could have avoided with reasonable care – this unilateral mistake will not support rescinding the agreement. *Bert Allen Toyota, Inc. v. Grasz*, 909 So.2d 763, 769 (Miss. Ct. App. 2005).

The undersigned, however, finds that Fulgham's self-serving testimony cannot be credited. The mediation of this action lasted six and one-half hours, extending beyond normal business hours. Both parties, their attorneys, and the court mentioned and discussed anhidrosis in connection with the equine supplements. Neither Fulgham nor his counsel ever made a distinction in those discussions between "preventing" anhidrosis and "treating" anhidrosis. While the court was aware of the two formulations, neither Fulgham nor his counsel ever expressed an intent to allow the Woffords a license for one formula, but not the other. Therefore, Fulgham's testimony related to such a distinction is not credible.

Furthermore, toward the end of the mediation, the Fulghams and their counsel drafted a memorandum attempting to set out the terms of the agreement to settle. This agreement was signed by both of the Fulghams. The memorandum they signed, while inadvertently omitting other details of the parties' agreement,[2] provided in pertinent part: "Fulghams to grant Woffords a license with respect to U.S. patent # 8,536,220 B2." A review of the patent shows that it includes a range of formulations, including the percentages of ingredients found in the sweat formulation. Furthermore, the patent's "Summary of the Invention" provides: "This invention more specifically provides a method for *alleviating* anhidrosis in an equine."(Emphasis added).

---

[2] Additional terms agreed on, but not included in this short hand-written memorandum, including allowing the Woffords to continue their business as it had been conducted prior to the conference; that Wofford would assign his rights under the patent to Fulgham; that each party would pay their own costs; that the parties would mutually release one another and that the license granted to the Woffords was perpetual and royalty-free. Fulgham's counsel admitted at that time these additional terms had in fact been a part of the settlement agreement.

If that were not specific enough, the "Detailed Description of the Invention" in the 220 patent spells out that "this nutritional supplement composition can be used to *treat* anhidrosis in equines." (Emphasis added). By agreeing to grant the license with respect to this patent, Fulgham necessarily must have known that he was agreeing to grant a license to manufacture the sweat formulation and to have it marketed for the "treatment" of anhidrosis.

Finally, the court cannot credit Fulgham's claim that he was ignorant of or mistaken as to how the Woffords had been conducting their competing business. Fulgham is a sophisticated business man. That Fulgham would bring this action for infringement of the patent, much less compromise his claims, without doing any rudimentary investigation into Wofford's actions is simply incredible. Fulgham certainly would have determined whether Wofford was "infringing" on what he testified was the most valuable aspect of the 220 patent. During the hearing it was made clear that Fulgham had Wofford's marketing materials, and the court does not accept that he did not look at them. Wofford's website showed the marketing of the anhidrosis formulation and the claims that it was effective in treating equine anhidrosis. This is the type of basic information that a sophisticated business man would be expected to obtain even before contacting counsel about bringing an action for infringement of the patent.

Therefore, the undersigned recommends that the settlement agreement be enforced and this action dismissed with prejudice. The settlement documents prepared by defense counsel have only been challenged as to the license to manufacture the anhidrosis treatment formulation and to make treatment claims. These documents were introduced as Exhibit G at the hearing. The plaintiff has raised no objection to any other language in the tendered settlement documents. Accordingly, the court should direct the plaintiff to execute the settlement agreements and

licensing agrement or, if he will not, to enter judgment against him in accordance with the terms of those documents.

ATTORNEYS FEES AND COSTS

The defendants seek an award of attorney's fees and costs incurred in prosecuting the motion to enforce the settlement agreement. This court has the inherent authority to impose costs and attorneys fees as a sanction for bad-faith litigation. *In re Case*, 937 F.2d 1014, 1015 (5th Cir. 1991). Here Fulgham has, as Wofford alleges, sought to renege on the settlement agreement reached during mediation. There is no basis in law or in fact for his position that there was not a meeting of the minds. Fulgham's conduct has caused not only the defendant to expend time and money to enforce the agreement, but has squandered judicial resources. This court is necessarily vested with the inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v NASCO, Inc.,* 501 U.S. 32, 43 (1991). Having forced the defendant to file and prosecute the motion to compel and to dismiss without a reasonable basis the plaintiff, Murray Fulgham, should be required to pay the defendant's reasonable attorney's fees and costs. Defendants should be granted leave to submit evidence of these items of expense.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.1(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions

accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THIS the 28th day of October, 2014.

/s/ David A. Sanders  
UNITED STATES MAGISTRATE JUDGE